<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS CINQUE,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NEWARK, et. al.<br><br>Defendants. | Civil Action No. 10-225 (JLL) (JAD)<br><br>**OPINION** |

**LINARES,** District Judge.

This matter comes before the Court by way of Defendant the City of Newark ("Newark")'s motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Def.'s Mot. for Summ. J., ECF No. 37). The Court has considered the Parties' submissions in support of and in opposition to the instant motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court GRANTS Newark's motion.

**I.    BACKGROUND**

This case stems from an on-duty back injury that Plaintiff Thomas Cinque ("Plaintiff") sustained on November 19, 2006, while employed by Newark as a sergeant in the Newark Police Department (the "Department"). (Def.'s 56.1 Stmt. ¶¶ 1, 5, ECF No. 37; Pl.'s Resp. 56.1 Stmt. ¶¶ 1, 5, ECF No. 40-2). Thereafter, Plaintiff "booked off" on sick leave as a result of his injury. (Def.'s 56.1 Stmt. ¶ 6; Pl.'s Resp. 56.1 Stmt. ¶ 6).

1

Almost one year later, on September 13, 2007, Plaintiff had not yet returned to work. (Def.'s 56.1 Stmt. ¶ 7, Pl.'s Resp. 56.1 Stmt. ¶ 7). Consequently, the Department's then-chief of police, Anthony Campos, sent a memorandum to Captain Ronald Kinder of the Department's Medical Services Office, directing him to schedule Plaintiff for a fitness-for-duty examination. (Def.'s 56.1 Stmt. ¶ 7; Pl.'s Resp. 56.1 Stmt. ¶ 7). Dr. Patrick Foye performed the examination on October 5, 2007, and opined that Plaintiff could no longer chase or restrain criminal suspects in his role as a police officer. (Def.'s 56.1 Stmt. ¶ 8; Pl.'s Resp. 56.1 Stmt. ¶ 8).

Two months later, on December 6, 2007, Plaintiff submitted an application to the New Jersey Division of Pensions and Benefits (the "Division") for disability retirement benefits from the Police and Firemen's Retirement System (the "PRFS"). (Def.'s 56.1 Stmt. ¶ 9; Pl.'s Resp. 56.1 Stmt. ¶ 9). Plaintiff declared therein that his "severe back pain radiating into the left leg" incapacitated him, and, thus, prevented him from further serving as a police sergeant. (Lipshutz Decl. Ex. C, ECF No. 37-6). In signing his application, Plaintiff attested that the information provided therein was "true and correct." (*Id.*). Newark's personnel director, Kecia Daniels, subsequently advised the Division that Newark did not oppose Plaintiff's application since Newark was "unable to provide an alternative position with duties capable of being performed by [Plaintiff] . . . ." (Def.'s 56.1 Stmt. ¶ 11; Pl.'s Resp. 56.1 Stmt. ¶ 11).

To the extent that Newark could provide Plaintiff with paid medical leave due to his injury, the parties agree that Newark could do so for up to one year pursuant to N.J.S.A. 40A:14-137. (Def.'s 56.1 Stmt. ¶ 22; Pl.'s Resp. 56.1 Stmt. ¶ 22). By January 8, 2008, according to Captain Kinder's calculation, Plaintiff had booked off on medical leave for almost one year. (Lipshutz Decl. Ex. E, ECF No. 37-8). As a result, on that date, Captain Kinder initiated the process to end Plaintiff's employment with Newark by filing a "Complaint Against Personnel."

(*Id.*). In his Complaint, Captain Kinder construed Dr. Foye's examination as finding that Plaintiff was unfit for full-duty work, and opined that "the only reasonable accommodation would be for [Plaintiff] to retire due to his injuries" because the Department could offer him no permanent light-duty position. (*Id.*). It is undisputed that the Department has no permanent light-duty positions. (*See* Def.'s 56.1 Stmt. ¶ 24; Pl.'s Resp. 56.1 Stmt. ¶ 24).

On January 9, 2008, the Department filed a "Preliminary Notice of Disciplinary Action" with the New Jersey Department of Personnel. (Lipshutz Decl. Ex. F, ECF No. 37-9). The notice charged Plaintiff with being unfit for full duty, urged for his removal, and scheduled a hearing for February 11, 2008. (*Id.*). Plaintiff attended the hearing, and "requested that any action on his termination be delayed pending the processing of his application for Accidental Disability Retirement . . . ." (Lipshutz Decl. Ex. T 141:5–19, ECF No. 23; Def.'s 56.1 Stmt. ¶ 18; Pl.'s Resp. 56.1 Stmt. ¶ 18). The Department subsequently issued a "Final Notice of Disciplinary Action," terminating Plaintiff, effective May 1, 2008. (Lipshutz Decl. Ex. G, ECF No. 37-10). Newark terminated Plaintiff on May 1, 2008. (Def.'s 56.1 Stmt. ¶ 20; Pl.'s Resp. 56.1 Stmt. ¶ 20).

Shortly thereafter, on May 15, 2008, Plaintiff filed a Verified Complaint and Order to Show Cause in Essex County Superior Court, seeking an injunction to both restore his employment and enjoin Newark from again terminating him. (Def.'s 56.1 Stmt. ¶ 27; Pl.'s Resp. 56.1 Stmt. ¶ 27). At that time, the Division had yet to act on Plaintiff's application for disability retirement benefits. (Def.'s 56.1 Stmt. ¶ 27; Pl.'s Resp. 56.1 Stmt. ¶ 27). Eventually, Superior Court Judge Theodore A. Winard denied Plaintiff's request for an injunction and dismissed the Verified Complaint with prejudice. (Def.'s 56.1 Stmt. ¶ 30; Pl.'s Resp. 56.1 Stmt. ¶ 30). During a hearing leading up to Judge Winard's denial and dismissal, Plaintiff's Counsel represented to

Judge Winard that Plaintiff could not perform the functions of a police officer. (Def.'s 56.1 Stmt. ¶ 28; Pl.'s Resp. 56.1 Stmt. ¶ 28).

In June 2008, the Division informed Plaintiff that the Board of Trustees of the PFRS had denied his application for disability retirement benefits. (Lipshutz Decl. Ex. O, ECF No. 37-18). The Board of Trustees later reconsidered and reaffirmed the denial in October 2008. (Lipshutz Decl. Ex. P, ECF No. 37-19).

Subsequently, Plaintiff administratively appealed both Newark's decision to terminate him and the Board of Trustee's decision to deny his application for disability retirement benefits to the New Jersey Office of Administrative Law. (Def.'s 56.1 Stmt. ¶ 33; Pl.'s Resp. 56.1 Stmt. ¶ 33). The Office consolidated Plaintiff's appeals into one matter before Administrative Law Judge Margaret M. Monaco. (Def.'s 56.1 Stmt. ¶ 33; Pl.'s Resp. 56.1 Stmt. ¶ 33). During the hearings before ALJ Monaco, Plaintiff testified that he could not perform the full duties of a police sergeant. (Def.'s 56.1 Stmt. ¶ 35; Pl.'s Resp. 56.1 Stmt. ¶ 35). He explained that he had difficulty driving and sitting for long periods of time. (Def.'s 56.1 Stmt. ¶ 35; Pl.'s Resp. 56.1 Stmt. ¶ 35). He also explained that he could neither chase nor apprehend suspects. (Def.'s 56.1 Stmt. ¶ 35; Pl.'s Resp. 56.1 Stmt. ¶ 35).

Ultimately, ALJ Monaco held on March 18, 2010, that Plaintiff was totally and permanently disabled, and, thus, incapable of performing the essential job duties of a police sergeant. (Def.'s 56.1 Stmt. ¶ 40; Pl.'s Resp. 56.1 Stmt. ¶ 40; Lipshutz Decl. Ex. Q, ECF No. 37-20). In her decision, ALJ Monaco observed that Plaintiff filed his disability retirement application with the Division before the Department filed any disciplinary charges against him. (Def.'s 56.1 Stmt. ¶ 43; Pl.'s Resp. 56.1 Stmt. ¶ 43). As a result, ALJ Monaco reversed the "Final Notice of Disciplinary Action" calling for Plaintiff's termination, held that Newark's

termination of Plaintiff was moot, and directed Newark to amend its records to reflect Plaintiff's disability retirement instead. (Def.'s 56.1 Stmt. ¶ 43; Pl.'s Resp. 56.1 Stmt. ¶ 43). ALJ Monaco also entered an Order granting Plaintiff's application for disability retirement benefits. (Def.'s 56.1 Stmt. ¶ 42; Pl.'s Resp. 56.1 Stmt. ¶ 42).

Thereafter, in May 2010, the Board of Trustees of the PFRS voted to adopt ALJ Monaco's decision, granting Plaintiff disability retirement benefits, retroactive to May 1, 2008. (Def.'s 56.1 Stmt. ¶ 44; Pl.'s Resp. 56.1 Stmt. ¶ 44). In August 2011, Newark updated its records to reflect Plaintiff's approval for disability retirement, effective May 1, 2008. (Def.'s 56.1 Stmt. ¶ 45; Pl.'s Resp. 56.1 Stmt. ¶ 45).

In November 2009, Plaintiff filed a Complaint in the Superior Court of New Jersey, Essex County, Law Division. (Compl., ECF No. 1-1). Newark removed the Complaint to this Court on January 14, 2010. (Notice of Removal, ECF No. 1). Plaintiff filed an Amended Complaint, the operative complaint in this matter, on February 7, 2011. (Am. Compl., ECF No. 11). Plaintiff's Amended Complaint alleges the following counts against Newark: (1) violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.* (Count I); (2) violation of the New Jersey Law Against Discrimination (the "NJLAD"), N.J.S.A. 10:5-1 *et seq.* (Count II); and (3) deprivation of due process in violation of 42 U.S.C. § 1983 (Count III). (*Id.* at ¶¶ 26-45). Count Four of Plaintiff's Amended Complaint alleges that five unnamed John Doe defendants caused Plaintiff to sustain emotional distress and economic loss. (*Id.* at ¶¶ 46-48).

The Court has federal question jurisdiction over Plaintiff's ADA and section 1983 claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's NJLAD claim pursuant to 28 U.S.C. § 1367. Newark now moves for summary judgment on all of Plaintiff's claims against it.

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## III. DISCUSSION

Plaintiff's Amended Complaint alleges that Defendant Newark: (1) violated the ADA; (2) violated the NJLAD; and (3) deprived Plaintiff of due process in violation of section 1983. (Am. Compl. ¶¶ 26-45). The common thread underlying Plaintiff's ADA and NJLAD claims is that Newark discriminated against Plaintiff based on his disability. (*See id.* at ¶¶ 29-30, 36-38). Indeed, the Amended Complaint alleges repeatedly that Newark rejected Plaintiff's application for a promotion "because he was disabled," and that Newark eventually terminated him "based upon his disability." (*Id.*). The Amended Complaint neither alleges nor implies that Plaintiff's claims are based on anything other than disability discrimination. Yet, in his Opposition Brief,

Plaintiff alleges that he "was treated unfairly and ultimately discriminated against as a result of his political affiliation." (Pl.'s Opp'n Br. 3, ECF No. 40). Because Newark's Brief in favor of summary judgment does not address this new allegation, Plaintiff asserts that the Court should deny Newark's motion. (*Id.* at 9). Plaintiff's assertion is unavailing.

"A plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'" *Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008) (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). Therefore, at this late stage, the Court will not permit Plaintiff to amend his Amended Complaint to assert an entirely new theory of discrimination based on his political affiliation through his Opposition Brief. *See, e.g.*, *Winsley v. Cook Cty.*, 553 F. Supp. 2d 967, 972-73 (N. D. Ill. 2008) (refusing to consider plaintiff's claims of sex and age-based discrimination alleged in her brief in opposition to summary judgment where her complaint alleged only race-based discrimination). Federal Rule of Civil Procedure 15(a) provided Plaintiff with a means to amend his Amended Complaint, and this Court will not allow Plaintiff to circumvent that Rule via his Opposition Brief. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)."). Accordingly, the Court now considers whether genuine disputes of material fact exist that preclude summary judgment with respect to Plaintiff's ADA and NJLAD claims, but only to the extent that any such disputes are based on Plaintiff's disability. The Court also considers whether granting Newark's summary judgment motion as to Plaintiff's section 1983 claim is appropriate.

A. <u>Whether Plaintiff is Entitled to Summary Judgment on Plaintiff's ADA Claim</u>

Plaintiff alleges that Newark violated the ADA when it terminated him because of his disability. (Am. Compl. ¶¶ 27-31). "In order to make out a prima facie case of disability discrimination under the ADA, [a plaintiff] must establish that [he] (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006) (citations omitted). Here, Newark does not dispute that Plaintiff had a disability and that he had suffered an adverse employment action because of that disability. (Def.'s Br. 18, ECF No. 37-1). Thus, at issue is whether Plaintiff is a "qualified individual."

The ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Turner*, 440 F.3d at 611 (citations omitted). The Court first addresses whether Plaintiff can perform the essential functions of a police officer without reasonable accommodation. In general, "essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires. The term . . . does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). Here, in his Opposition Brief, Plaintiff concedes that he cannot perform the essential functions of a police officer, noting that he "has never contended otherwise" during the course of this litigation. (Pl. Opp'n Br. 10). Since Plaintiff has conceded this point, he cannot meet his burden of proving that he is a "qualified individual," an essential element of his ADA claim. As a result, Newark is entitled to summary judgment on Plaintiff's ADA claim.[1] *See Gaul v. Lucent Tech., Inc.*, 134

---

[1] Assuming, *arguendo*, that Plaintiff had conceded only that he cannot perform the essential functions of a police officer *without* reasonable accommodation, Plaintiff has not pointed to any "reasonable accommodation" that would enable him to perform the essential functions of a police officer. To the extent that Plaintiff argues that the creation of a permanent light-duty position for him would have been a reasonable accommodation under the ADA, Plaintiff's

8

F.3d 576, 580 (3d Cir. 1998) (noting that to state a prima facie case of discrimination under the ADA, a plaintiff must demonstrate, among other things, that "he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer"); *Cf. Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022-23 (7th Cir. 1997) (holding that plaintiff could not prevail on his ADA claim where Plaintiff had admitted that he could not perform the essential functions of the position that he desired with or without reasonable accommodation).

    B.    <u>Whether Newark is Entitled to Summary Judgment on Plaintiff's NJLAD Claim</u>

Plaintiff alleges that Newark violated the NJLAD when it terminated him because of his disability. (Am. Compl. ¶¶ 35-38). The NJLAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N. J. S.A. § 10:5–4.1. Relatedly, an "employer must make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship." N.J.A.C. 13:13–2.5(b). To state a *prima facie* case of failure to accommodate one's disability under the NJLAD, a plaintiff must show that " '(1) [he] had a [NJLAD] handicap; (2) was qualified to perform the essential functions of the job, with or without accommodation; and (3) suffered an adverse employment action because of the handicap.' " *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 150 (3d Cir. 2004) (quoting *Bosshard v. Hackensack Univ. Med. Cent.*, 345 N.J. Super. 78, 91 (App. Div. 2001)).

---

argument fails since "[t]he ADA does not require an employer to create a new position in order to accommodate an employee with a disability, or transform a temporary light duty position into a permanent position." *Turner*, 440 F.3d at 614 (citing *Buskirk v. Apollo Metals*, 307 F.3d 160, 169 (3d Cir. 2002)).

As discussed in the previous section of this Opinion, Plaintiff has conceded that he cannot perform the essential functions of a police officer, and, thus, Plaintiff cannot prove an essential element of his NJLAD claim.[2] *See Victor v. State*, 203 N.J. 383, 410 (2010) (noting that to state a prima facie disability discrimination claim under the NJLAD a plaintiff must demonstrate, among other things, "that he . . . is qualified to perform the essential functions of the job, or was performing those essential functions, either with or without a reasonable accommodation."). Thus, Newark is entitled to summary judgment as to Plaintiff's NJLAD claim as well.

    C.    <u>Whether Newark is Entitled to Summary Judgment as to Plaintiff's Section 1983 Claim</u>

Plaintiff's section 1983 claim alleges that Newark violated his Fifth and Fourteenth Amendment due process rights by terminating him because of his disability. (Am. Compl. ¶¶ 41-42). As a matter of law, Plaintiff cannot bring a section 1983 claim against Newark premised on the alleged violation of his Fifth Amendment due process rights. It is axiomatic that a person cannot invoke the Fifth Amendment's guarantee that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law" against a municipality. U.S. Const. Amend. V; *Nguyen v. United States Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983) ("The limitations of the fifth amendment [sic] restrict only federal government action . . . ."); *see also Stouch v. Twp. of Irvington*, No. 03-6048, 2008 WL 2783338, *18-19 (D.N.J. July 16, 2008) (granting summary judgment in favor of township and township police department on plaintiff's Fifth

---

[2] Even if Plaintiff had conceded only that he cannot perform the essential functions of a police officer *without* reasonable accommodation, once again, Plaintiff has not pointed to any "reasonable accommodation" that would enable him to perform the essential functions of a police officer. To the extent that Plaintiff argues that the creation of a permanent light-duty position for him would have been a reasonable accommodation under the NLJAD, Plaintiff's argument fails since the NJLAD does not " 'require an employer to create a permanent light-duty position to replace a medium-duty one.' " *Raspa v. Office of the Sheriff of Gloucester Cty.*, 191 N.J. 323, 339 (2007) (quoting *Muller v. Exxon Research & Eng'g Co.*, 345 N.J. Super. 595, 608 (App. Div. 2001), *certify denied*, 172 N.J. 355 (2002)).

Amendment procedural due process claim on this basis). Accordingly, the Court addresses only whether Newark is entitled to summary judgment on Plaintiff's section 1983 claim premised on Newark's alleged violation of his Fourteenth Amendment due process rights.[3] To do so, the Court must determine if there are any genuine disputes of material fact as to whether Newark deprived Plaintiff of either his substantive or procedural due process rights under the Fourteenth Amendment.[4]

1. <u>Plaintiff's Fourteenth Amendment Substantive Due Process Claim</u>

To prevail on a substantive due process claim, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Penns. State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000) (internal quotations and citation omitted). Whether a property interest is protected depends on whether that interest is "fundamental" under the United States Constitution. *Id.* at 140 (citations omitted). The Third Circuit and many other circuits have held unequivocally that public employment is not a "fundamental" property interest entitled to substantive due process protection. *Id.* at 142-43 (citations omitted); *see, e.g., Singleton v. Cecil*, 176 F.3d 419, 425-26 (8th Cir. 1999) (en banc) ("[A] public employee's interest in continued employment with a governmental employer is not so 'fundamental' as to be protected by substantive due process . . . ."). Thus, Plaintiff simply cannot bring a Fourteenth Amendment substantive due process claim

---

[3] The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. Amend. XIV, Sec. 1.

[4] Plaintiff's Opposition Brief sheds no light whatsoever on the substance of his section 1983 claim, and does not counter the arguments that Newark raised in support of its motion for summary judgment as to that claim. The only beacon that the Court has to illuminate its understanding of Plaintiff's position is his Amended Complaint. That beacon is dim, as Plaintiff's allegations are virtually cursory. (*See* Am. Compl. ¶¶ 40-45). That said, the Court understands Plaintiff's Fourteenth Amendment due process claim as being premised on Newark's termination of Plaintiff because of his disability. (*See id.*).

11

against Newark to the extent that his claim is premised on Newark's termination of Plaintiff. Accordingly, Newark is entitled to summary judgment as to this claim. *See, e.g., Smith v. Twp. Of E. Greenwich*, 519 F. Supp. 2d 493, 503 (D.N.J. 2007) (granting summary judgment to defendant township because plaintiff's public employment as a police sergeant was "not a property right protected by the substantive Due Process Clause of the Fourteenth Amendment.").

        2.    <u>Plaintiff's Fourteenth Amendment Procedural Due Process Claim</u>

To prevail on a procedural due process claim, a plaintiff must establish "that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.' " *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Newark concedes that Plaintiff's employment as a police sergeant is an individual interest that is encompassed within the Fourteenth Amendment's procedural due process protections. (Def. Br. 30). Thus, the Court need only consider whether the procedures that Newark made available to Plaintiff provided him with "due process of law." To do so, the Court must assess whether Newark provided Plaintiff with an adequate pretermination hearing, coupled with post-termination administrative procedures. *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987) ("[P]rior to termination, a public employee with a property interest in continued employment[] must be afforded 'a pretermination opportunity to respond, coupled with post-termination administrative [or judicial] procedures.' " *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547-48 (1985)).

"[T]he pretermination 'hearing,' though necessary, need not be elaborate," nor must it "definitely resolve the propriety of the discharge." *Loudermill*, 470 U.S. at 545. However, the pretermination hearing "should be an initial check against mistaken decisions—essentially, a

12

determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545-46 (citation omitted). "To ensure that the pretermination hearing is a meaningful one, the employee 'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.' " *Morton*, 822 F.2d at 368 (quoting *Loudermill*, 470 U.S. at 546).

Here, Plaintiff had written notice of Newark's charges against him, and an explanation of Newark's evidence. Specifically, Newark issued a Preliminary Notice of Disciplinary Action to Plaintiff that charged him with being unfit for duty, and cited to Dr. Foye's fitness-for-duty examination for support. (Def.'s 56.1 Stmt. ¶ 15; Pl.'s Resp. 56.1 Stmt. ¶ 15; Lipshutz Decl. Ex. F). Newark also subsequently provided Plaintiff with an opportunity to present his side of the story at a hearing on February 11, 2008. (Lipshutz Decl. Ex. T, Cinque Dep. 141:5–19. Although Plaintiff denies that he pled guilty to the charge against him at the hearing, he testified that he attended the hearing, and he has not suggested that Newark deprived him of an opportunity to present his case. (*See* Def.'s 56.1 Stmt. ¶¶ 16-17; Pl.'s Resp. 56.1 Stmt. ¶¶ 16-17; Lipshutz Decl. Ex. T, Cinque Dep. 141:5–19). Indeed, Plaintiff "admits that he requested that any action on his termination be delayed pending the processing of his application for Accidental Disability Retirement . . . ." (Pl.'s Resp. 56.1 Stmt. ¶¶ 16-17). Thus, there is no genuine dispute of material fact that Newark provided Plaintiff with a constitutionally sufficient pretermination hearing. This conclusion is buttressed by the Third Circuit's pronouncement that "[o]n the whole, we do not think that excessive pretermination precaution [in the form of an impartial pretermination hearing] is necessary where the state provides a neutral tribunal at the post-

13

termination stage that can resolve charges of improper motives." *McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir. 1995)

Plaintiff has not argued that the post-termination administrative processes available to him were constitutionally inadequate, and has not pointed to any evidence suggesting so. Indeed, Plaintiff availed himself of those processes to secure the result that he desired all along—the approval of his application for accidental disability retirement benefits and the amendment of Newark's employment records to reflect Plaintiff's disability retirement instead of his termination. (Def.'s 56.1 Stmt. ¶¶ 40, 42-45; Pl.'s 56.1 Stmt. ¶¶ 40, 42-25). Accordingly, Newark is entitled to summary judgment on Plaintiff's Fourteenth Amendment procedural due process claim.

## IV.  CONCLUSION

For the reasons discussed herein, the Court GRANTS Defendant Newark's motion for summary judgment. The Court also DISMISSES Count Four of Plaintiff's Amended Complaint against five unnamed John Doe defendants with prejudice pursuant to Federal Rule of Civil Procedure 21.[5]

An appropriate Order accompanies this Opinion.

---

[5] Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. Fed R. Civ. P. 21. The "[u]se of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." *Blakeslee v. Clinton Cty.*, 336 F. App'x 248, 250 (3d Cir. 2009) (internal citations omitted). Plaintiff has had approximately two years to identify the five John Doe defendants in Count Four of his Amended Complaint, but has not done so. As a result, the Court dismisses Count Four of Plaintiff's Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 21. *See, e.g., id.* at 250-51 (affirming district court's dismissal of plaintiff's claim against five unnamed John Doe defendants at the summary judgment stage where plaintiff had approximately ten months to identify the John Doe defendants).

DATED: 26 of March, 2013.

JOSE L. LINARES
U.S. DISTRICT JUDGE